UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

KATHRYNN PALS, as personal
representative of the Estate of
JAMISON B. PALS and personal
representative of the ESTATE of
EZRA A. PALS, and GORDON
ENGEL, as personal representative of
the Estate of KATHRYNE L. PALS,
personal representative of the Estate of
VIOLET J. PALS, and personal
representative of the Estate of
CALVIN B. PALS,

and

JUAN PAUBLO VELEZ, MARTINIANA
VELEZ, and PAOLA VELEZ,

                Plaintiffs,

v.

TONY WEEKLY JR., BOHREN
LOGISTICS, INC., INTERSTATE
HIGHWAY CONSTRUCTION, INC.,
and D.P. SAWYER, INC.,

                Defendant.

Civil File No. 8:17-cv-00027
8:17-cv-00175

**PLAINTIFFS' REPLY BRIEF IN
SUPPORT OF MOTION FOR
DISPOSITIVE SANCTIONS, OR, IN THE
ALTERNATIVE, FOR SANCTIONS AND
TO COMPEL DISCOVERY**

# TABLE OF CONTENTS

**Page**

I.   THIS LITIGATION WAS REASONABLY FORESEEABLE as of July 31, 2016, AND THEREAFTER IHC HAD A DUTY TO PRESERVE EVIDENCE. ......................4

II.   IHC'S STANDARD OPERATING PROCEDURE DID NOT FULFILL ITS DUTY TO PRESERVE EVIDENCE. ..................................................................8

III.   THERE IS NO GENUINE DISPUTE THAT IHC FAILED TO PRESERVE RELEVANT EVIDENCE FOR THE PURPOSE OF DEPRIVING PLAINTIFFS OF THE USE OF THAT EVIDENCE AT TRIAL. ......................................................12

    A.   IHC's Failure To Implement A Legal Hold Or Otherwise Preserve Emails Was Not Justified By Its Purported Belief That It Had Done Nothing Wrong. ................................................................................................. 13

    B.   IHC Does Not Address Mr. Maccioli's Email Instructing IHC Personnel To Hide Evidence So It Would Not Be "Discoverable" In This Lawsuit. ........... 15

    C.   IHC Has Not Raised A Genuine Dispute That It Deleted The "Weekly Safety Meeting Checklist" Forms From Its Server. ............................................ 15

    D.   There Is No Genuine Dispute That IHC Made Knowingly False Representations Throughout The Discovery Period. ............................................ 20

    E.   IHC Does Not Raise A Genuine Dispute That IHC Secretly Manipulated The October 2017 Email Search To Limit The Results. ....................................... 22

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ACI Worldwide Corp. v. MasterCard Techs., LLC*,
  2016 U.S. Dist. LEXIS 3854 (D. Neb. Aug. 31, 2015) ............................................................9

*Alabama Aircraft Industries v. Boeing, Inc.*,
  319 F.R.D. 730 (N.D. Ala. 2017)...........................................................................................16

*Dillon v. Nissan Motor Co.*,
  F.2d 263, 267 (8th Cir. 1993) ................................................................................................4

*E\*Trade Secs. LLC v. Deutsche Bank AG*,
  230 F.R.D. 582 (D. Minn. 2005)...........................................................................................5

*Falcone v. Speedway LLC*,
  2017 U.S. Dist. LEXIS 7324 (E.D. Pa. Jan. 19, 2017) .........................................................4

*GN Netcom v. Plantronics*,
  2016 U.S. Dist. LEXIS 93299 (D. Del. July 12, 2016) .......................................................12

*Kansas City Southern Railway Co. v. Nichols Construction Company, LLC*,
  2007 U.S. Dist. LEXIS 62928 (E.D. La. Aug. 27, 2007) ...................................................5, 6

*Morris v. Union Pacific Railroad Company*,
  2002 U.S. Dist. LEXIS 29101 (W.D. Ark. Sept. 19, 2002)...............................................5, 6, 7

*Pavon v. Britten*,
  2015 U.S. Dist. LEXIS 104593 (D. Neb. Aug. 10, 2015) ..................................................16

*Phillip M. Adams & Assocs., LLC v. Dell, Inc.*,
  621 F. Supp. 2d 1173 (D. Utah 2009)...................................................................................4

*Schmidt v. City of Bella Villa*,
  557 F.d 564, 571 (8th Cir. 2009) ........................................................................................15

*Stevenson v. Union Pacific Railroad*,
  354 F.3d 739 (8th Cir. 2004) ....................................................................................9, 10, 11

*Stooksbury v. Ross*,
  2011 U.S. Dist. LEXIS 133999 (D. Tenn. Nov. 21, 2011)................................................16, 20

*Voom HD Holdings LLC v. EchoStar Satellite LLC*,
  93 A.D.3d 33, 939 N.Y.S.2d 321 (1st Dept. 2012)..............................................................6

*Zubulake v. UBS Warburg LLC*,
   220 F.R.D. 212 (S.D.N.Y. 2003) ..........................................................................................4, 9

**Other Authorities**

Fed. R. Civ. P. 37(e)(2) ...............................................................................................21

Rule 30(b)(6) ...............................................................................................1, 6, 16, 20, 22

In opposition to Plaintiffs' Motion for Dispositive Sanctions, Defendant Interstate Highway Construction, Inc. ("IHC") does not genuinely dispute that it failed to preserve critical documents. Instead, IHC argues at length that it had no duty to preserve evidence in the first instance because it could not reasonably anticipate that litigation would result from a fatal automobile accident in a construction zone for which it was the prime contractor responsible for motorist safety. In support of this contention, IHC offers yet another false affidavit from its Safety Director Mr. Maccioli, this time stating that IHC failed to implement a legal hold because he "did not believe that IHC was going to be sued." (Dkt. 173-2 ¶ 2.) This self-serving statement is not only irrelevant, it is false. The evidence that IHC should have anticipated litigation as of July 31, 2016, is overwhelming:

- Less than two months before the crash, Mr. Maccioli instructed IHC's field leadership that "any time there is a work zone accident . . . we need to call me, get a police report, and build a file with all the IHC pertinent information. Why? Because we get named in lawsuits just because accidents happen in the work zone," (Dkt. 166-3);

- Within hours of the crash, Mr. Maccioli recognized that photographs of the accident scene (and the email forwarding them) "now . . . are discoverable" in subsequent litigation, (Dkt. 166-4);

- Within weeks of the crash, the Nebraska Department of Roads ("NDOR") expressly advised IHC that "this project has been placed on litigation hold by the state due to the accident on 7/31/16 that had 6 fatalities," (Dkt. 166-6);

- When asked during IHC's Rule 30(b)(6) document preservation deposition whether he had "reason to believe, as of July 31, 2016, that this particular crash that resulted in six fatalities might result in a lawsuit," Mr. Maccioli responded "[t]hat would seem reasonable." (Dkt. 166-2 at 128.)

Given this evidence, it is remarkable that IHC would now claim it could not have reasonably anticipated the need to preserve documents for use in this lawsuit, including its emails and key safety records that discussed "accidents," "changes in traffic conditions," and "safety comments and/or recommendations" for the highway construction zone where the

1

accident occurred.  There is no question that such documents would be of immeasurable importance in subsequent litigation.

Like IHC's claim that it did not anticipate litigation, the Court may also reject IHC's other primary contentions made in opposition to Plaintiffs' Motion.  First, the Court should reject IHC's characterization of Plaintiffs' motion as one about "a delay in document production." Plaintiffs are not seeking relief for the delay in IHC's document production.  Rather, Plaintiffs cite to that delay as evidence of their primary concern: IHC's purposeful efforts to conceal and destroy evidence.  For months, IHC falsely represented that it had produced all responsive and relevant documents and disclosed all individuals with relevant knowledge when it knew that it had not.  These knowingly false statements are strong evidence that IHC's failure to preserve evidence was purposeful.

Second, the Court should reject as unreasonable IHC's reliance on its "standard operating procedure" of saving to its server only those "official" project documents that it had "designed to be part of the record" in the exercise of each employees' individual judgment.  Courts across the country have held that parties who anticipate litigation may not blindly follow their ordinary course of business document retention practices if such practices are not reasonably tailored to preserve ESI that may be relevant in later litigation.  IHC's "operating procedure" here (which did not include any steps to protect emails and other important records from deletion) was guaranteed to result in the loss of relevant evidence, which it has.  IHC may not choose to preserve only those "official" documents that it "designed to be part of the record," and then leave other relevant documents exposed to permanent deletion because they are "unofficial"

(whatever that means).  IHC's flawed understanding of its discovery obligations has undermined both the truth-seeking function of the Court and Plaintiffs' ability to fairly prosecute this case.

Third, the Court should reject IHC's baseless and speculative efforts to raise a genuine dispute as to its bad faith destruction of evidence.  For example, the Court should reject as entirely speculative IHC's suggestion now that its safety meeting checklist forms may have "potentially" been removed from its server as the result of a "possible" "malware attack" by some unknown hacker with unknown motives.  IHC has conjured this theory from thin-air, having made no mention of a suspected "malware" attack previously.  Moreover, IHC does not explain how it is that this phantom "malware" attack was able to reach and delete only IHC's safety meeting checklist forms for this project (*i.e.*, the internal records most likely to have evidence damaging to IHC in this lawsuit) while leaving IHC's other "official" project documents completely intact.  IHC's wild and unsupported "malware" theory only reinforces Plaintiffs' point that there is no credible explanation for the deletion of IHC's key safety records other than bad faith spoliation.

Plaintiffs understand the magnitude of the relief they seek in this Motion.  But in light of IHC's bad faith spoliation of evidence and knowingly false statements to the Court, such relief is necessary to remedy the substantial prejudice IHC's misconduct has caused.

## <u>ARGUMENT</u>

The Court is no doubt familiar with the background of this dispute after months of briefing and its prior Order authorizing sanctions against IHC.  (Dkt. 148.)  Plaintiffs will not repeat that background here, and refer the Court to their opening Brief for a detailed recitation of the background giving rise to this motion.[1]  (Dkt. 165 at 3-20.)

---

[1] IHC incorrectly states that "[t]he only material that is being disputed regarding the Motion to Compel is the email .pst file from October 17th and the email .pst file from December 17th."

3

## I.     THIS LITIGATION WAS REASONABLY FORESEEABLE AS OF JULY 31, 2016, AND THEREAFTER IHC HAD A DUTY TO PRESERVE EVIDENCE.

IHC identifies as a "threshold question" the date upon which it had a duty to preserve documents related to the accident and construction zone and proposes two possible dates, hoping that one sticks: (1) January 23, 2017 (the date it received a preservation letter from Plaintiffs' counsel) and (2) April 17, 2017 (the date IHC was made a party to the litigation and served with the Complaint).  (IHC Br., Dkt. 173-1 at 8.)  Neither date is the correct one.

The law is clear that "[s]anctions may be imposed against a litigant who is on notice that documents and information in its possession are relevant to litigation, or ***potential litigation***." *Dillon v. Nissan Motor Co.*, F.2d 263, 267 (8th Cir. 1993) (emphasis added).  The critical question is whether the potential litigation was "***reasonably foreseeable***."  *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) (emphasis added).  In its Brief, IHC boldly claims that Plaintiffs have "not cited any authority—and no such authority exists—for the proposition" that it was reasonable for IHC to anticipate litigation immediately after this fatal car accident.  (Dkt. 173-1 at 13.)  IHC is wrong on both the law and the facts.

It is not the law, as IHC argues, that actual notice of a threatened lawsuit is required to trigger a duty to preserve evidence.  (IHC Br. at 13, Dkt. 173-1.)  The Court should therefore reject IHC's argument that its duty to preserve evidence did not arise until it received a formal notice of representation letter from Plaintiffs' counsel in January 2017.  "[C]ounsel's letter is not the inviolable benchmark" with respect to the duty to preserve.  *Phillip M. Adams & Assocs., LLC v. Dell, Inc.*, 621 F. Supp. 2d 1173, 1191 (D. Utah 2009); *Falcone v. Speedway LLC*, 2017 U.S. Dist. LEXIS 7324, at *16 n.4 (E.D. Pa. Jan. 19, 2017) (holding the defendant's duty to

---

(IHC Br., Dkt. 173-1 at 7.)  Plaintiffs respectfully refer the Court to their prior submissions in support of this Motion, which includes the correspondence between the parties.

preserve arose when the accident at issue occurred, and not when "it received a letter from [plaintiff's] counsel").  Again, IHC's duty to preserve evidence arose when the possibility of litigation became "reasonably foreseeable."  *E*Trade Secs. LLC v. Deutsche Bank AG*, 230 F.R.D. 582, 587 (D. Minn. 2005).  As the case law makes clear, litigation was reasonably foreseeable here when a fatal accident occurred in a construction project for which IHC was the prime contractor responsible for traffic safety.

Indeed, courts analyzing similar accidents have held that litigation was reasonably foreseeable immediately after the accident occurred.  For example, in *Morris v. Union Pacific Railroad Company*, plaintiffs sought spoliation sanctions related to defendant's destruction of evidence after an accident involving a train and semi-truck and trailer.  2002 U.S. Dist. LEXIS 29101, at *1-4 (W.D. Ark. Sept. 19, 2002).  Like IHC here, the defendant in *Morris* argued that sanctions were improper because it merely deleted documents pursuant to a document retention policy prior to being sued.  *Id.* at *12-13.  The court disagreed "because the railroad was on notice that a serious injury had occurred" that "was of sufficient magnitude to give rise to the possibility that litigation might ensue."  *Id.* at *13.  The destruction of relevant evidence constituted bad faith spoliation "in light of the notice created by the injury" itself.  *Id.* at *30.

Likewise, in an analogous setting, the court in *Kansas City Southern Railway Co. v. Nichols Construction Company, LLC*, held that it was reasonable for the defendant to anticipate litigation immediately after the accident in question.  2007 U.S. Dist. LEXIS 62928 (E.D. La. Aug. 27, 2007).  At issue in *Kansas City Southern* was a collision between a train and a semi-truck and trailer.  *Id.* at *5.  Defendant claimed work product protection over certain documents prepared immediately after the accident in reasonable anticipation of litigation.  *Id.* at*12-18.

The court agreed.  *Id.* at *18.  Based on the "severity of the accident," the court held "it was reasonable for [defendant] to anticipate litigation on . . . the day of the accident."  *Id.*

The same principles from *Morris* and *Kansas City Southern* apply in this case.  The accident here resulted in six fatalities and severe permanent injuries to many others.  Because of the severity of the accident, which involved multiple vehicles and occurred in an active construction zone for which IHC was the general contractor responsible for the safety of the motorist public, this litigation was reasonably foreseeable immediately after the accident occurred on July 31, 2016.  *See Morris*, 2002 U.S. Dist. LEXIS 29101, at *30; *Kansas City Southern*, 2007 U.S. Dist. LEXIS 62928, at *18.  Thus, IHC's failure to exercise reasonable care to preserve documents after that date violated its duty to preserve evidence, even if destroyed pursuant to its standard operating practices.[2]  *Morris*, 2002 U.S. Dist. LEXIS 29101, at *30.

Indeed, there is no genuine dispute that IHC's duty to preserve arose on July 31, 2016, because IHC has admitted that it was reasonable to anticipate litigation as of that date.  During its 30(b)(6) deposition, IHC's Safety Director, Tony Maccioli, testified it was "reasonable" to expect litigation immediately after this accident:

> **Q:**     And so did you have reason to believe, as of July 31, 2016, that this particular crash that resulted in six fatalities might result in a lawsuit?

---

[2] In its Brief, IHC also invents the rule that no duty to preserve arises until the defendant has notice of the specific claims and parties that will later become involved.  (IHC Br. at 15-17, Dkt. 173-1.)  Courts have rejected such a narrow view of the duty to preserve.  *See, e.g.*, *Voom HD Holdings LLC v. EchoStar Satellite LLC*, 93 A.D.3d 33, 42-43, 939 N.Y.S.2d 321 (1st Dept. 2012) (rejecting this approach because it "would encourage parties who actually anticipate litigation, but do not yet have notice of a 'specific claim' to destroy their documents with impunity").  In any event, it was reasonably foreseeable that Plaintiffs would bring specific claims for wrongful death and negligence against IHC after their children and grandchildren were killed in a construction project for which IHC was responsible.  *See* Dkt. 166-3 (June 2016, email from T. Maccioli stating that IHC anticipates litigation "any time there is a work zone accident . . . [b]ecause we get named in lawsuits just because accidents happen in the work zone"); Dkt. 166-4 (July 31, 2016, email from T. Maccioli recognizing that emails sent about this accident would be "discoverable" in litigation against IHC).

**A:**        That would seem reasonable.

(Pls.' Index of Evidence ("Index") Ex. B, Dkt. 166-2 at 128.)  IHC's admission is consistent with

other evidence establishing that its duty to preserve arose immediately after the crash.  For

example, two months before the accident, Mr. Maccioli emailed IHC's field leadership noting

that IHC anticipates litigation "any time there is a work zone accident . . . [b]ecause we get

named in lawsuits just because accidents happen in the work zone."  (*Id.* Ex. C, Dkt. 166-3.)

This is not a typical accident—six people were killed.  *See Morris*, 2002 U.S. Dist. LEXIS

29101, at *1-4.  And within hours of the accident, Mr. Maccioli had already recognized that

emails about the conditions of the project would later be "discoverable" in subsequent litigation.

(Index Ex. D-E, Dkt. 166-4,-5.)  IHC does not mention (let alone address) these facts in its Brief.

The evidence also contradicts IHC's argument that it did not anticipate litigation because

it purportedly believed that it "had done nothing wrong."  (IHC Br. at 14, Dkt. 173-1.)  If the law

allowed parties to avoid the duty to preserve on this ground, then every defendant that denied

liability could destroy evidence with impunity because of their stated belief that they "had done

nothing wrong."  This is not the law for good reason.

The Court should also reject IHC's arguments that litigation was not reasonably

foreseeable as a result of the August 17, 2016 "notice that IHC received from NDOR."  (*Id.* at

18.)  IHC cites an ***internal*** email chain between IHC personnel in which IHC's Project Manager

describes a conversation he purportedly had with NDOR's Project Manager, Troy Pedersen,

about the litigation hold notice NDOR provided to IHC after the accident.  (*Id.*)  Because IHC's

own summary of that conversation included the words "[s]aid it [the eventual lawsuit] shouldn't

affect IHC," IHC now claims it had no reason to anticipate litigation because "NDOR had

already stated that there would be no claim against IHC."  (*Id.* at 14, 18.)  But Mr. Pedersen of

7

NDOR flatly denies that he ever instructed IHC that it would not be implicated in a subsequent lawsuit resulting from the fatal accident.  (Pls.' Supp. Index of Evidence ("Supp. Index") Ex. AD, Pedersen Tr. at 233-34.)  In other words, IHC is relying on its own self-serving and incorrect understanding of NDOR's litigation hold notice.

In any event, even if Mr. Pedersen did speculate that a subsequent lawsuit "shouldn't affect IHC," it was not reasonable for IHC to rely on his unqualified opinion to somehow justify its failure to preserve evidence.  Mr. Pedersen's speculative opinion did not change the underlying fact that it was reasonably foreseeable litigation would arise from the six fatalities that occurred within a construction project for which IHC was the prime contractor responsible for traffic safety.  Additionally, the only reason why NDOR would have contacted IHC about its formal litigation hold was to ensure that IHC had also implemented a legal hold as its prime contractor for the project.  (*See* Index Ex. F, Dkt. 166-6.)  No matter what collateral discussions may have occurred between Messrs. Pedersen and Clark, IHC should have instituted its own hold as NDOR had done and had apparently instructed IHC to do.  In sum, NDOR's litigation hold notice to IHC did not somehow relieve IHC of its duty to preserve evidence as IHC argues now.

Accordingly, because litigation was reasonably foreseeable as of July 31, 2016, when the accident occurred, IHC owed a duty at that time and moving forward to preserve all documents likely to be relevant in subsequent litigation.

## II.   IHC'S STANDARD OPERATING PROCEDURE DID NOT FULFILL ITS DUTY TO PRESERVE EVIDENCE.

In the alternative, IHC argues that even if it had a duty to preserve documents immediately after the accident, it fulfilled that duty through its "standard operating procedure," under which IHC's employees, "as a matter of each individual employee's judgment," saved to

its internal server only those "official" documents that were "designed to be part of the record, not anything else." (Index Ex. B, Dkt. 166-2 at 27, 68, 129-32.)

IHC's "standard operating procedure" to preserve only those project-related documents that its employees viewed as "official" is not consistent with its duty to take reasonable steps to preserve documents for use in subsequent litigation. "The scope of permissible discovery is extremely broad." *ACI Worldwide Corp. v. MasterCard Techs., LLC*, 2016 U.S. Dist. LEXIS 3854, at *4 (D. Neb. Aug. 31, 2015); *see also Zubalake,* 220 F.R.D. at 217-218 (equating the scope of discovery with the scope of the duty to preserve evidence applicable to information "relevant to the claims or defenses of any party, or which is relevant to the subject matter involved in the action"). In light of the broad scope of permissible discovery, IHC's practice of not preserving documents other than those its employees viewed as "official" was guaranteed to result in the deletion of relevant and discoverable material. *Id.* For example, IHC's employees did not view their project-related emails as "official" documents and therefore did not preserve emails on IHC's server. As another example, IHC destroyed all hardcopy documents it did not view as "official," such as handwritten notes from important meetings following the crash. Similarly, IHC employees regularly communicated about the project through text message, but did not save their text messages to the server. (Index Ex. B, Dkt. 166-2 at 105-08.) No doubt most potential defendants would prefer to preserve for use in anticipated litigation only those documents they had "designed to be part of the record" as IHC has done here, but such an approach violates the duty to take reasonable steps to preserve relevant evidence.

IHC argues that the Eighth Circuit's holding in *Stevenson v. Union Pacific Railroad*, permits parties to destroy relevant documents pursuant to a standard operating procedure. 354 F.3d 739 (8th Cir. 2004). (*See* IHC Br. at 11, 30-31, Dkt. 173-1.) But IHC's reliance on

*Stevenson* could not be further from the mark.  In that case, the Eighth Circuit ***affirmed*** the district court's adverse inference instruction because "a corporation cannot blindly destroy documents and expect to be shielded by a seemingly innocuous document retention policy."  *Id.* at 750 (citation omitted) (internal quotation marks omitted).

Ignoring the actual holding of *Stevenson*, IHC largely focuses on a small portion of the decision in which the Eighth Circuit reversed sanctions resulting from the deletion of other track maintenance records reflecting the condition of the track more than a year before the accident that the defendant had destroyed pursuant to its ordinary document retention policy.  *Id.* at 748. The defendant in *Stevenson* had a policy to delete maintenance records after one year, and thus the court held that the deletion of certain stale maintenance records pursuant to the defendant's routine retention policy could not support a finding of bad faith spoliation given the limited relevance of records reflecting the condition of the track a year before the accident.  *Id.* at 749. The Eighth Circuit made clear, however, that the defendant should be sanctioned for its purposeful deletion of documents after it was on notice that they might be relevant to subsequent litigation.  *Id.* at 749-50.

If anything, the *Stevenson* holding supports Plaintiffs' motion.  IHC's destruction of evidence mirrors the spoliation in *Stevenson* that the Eighth Circuit sanctioned.  Like the defendant in that case, IHC failed to preserve relevant documents after the accident occurred when litigation was reasonably foreseeable.  Contrary to stale maintenance records reflecting the condition of a railroad track a year before an accident, the deleted records in this case include IHC's project-related emails and internal safety records reflecting IHC's impressions and observations regarding the safety of the construction zone as it was configured *throughout the entirety of the project*.  *See id.* at 748 (finding that the destruction of records from at or around

10

the time of the accident "creates a sufficiently strong inference of an intent to destroy it for the purpose of suppressing evidence of the facts surrounding the [accident] at the time of the accident").

Indeed, IHC fails to point out that the Eighth Circuit in *Stevenson* affirmed the district court's sanctions against the defendant for its deletion of track maintenance records "closest in time to the accident and thus most relevant." *Id.* at 749. Like the defendant in *Stevenson*, IHC has also failed to take steps to preserve the overwhelming majority of its project-related emails (regardless of proximity to the accident) and has manually deleted *every single one* of its safety meeting checklists for the entirety of the Project even though IHC ordinarily maintains such documents on its server indefinitely.

Moreover, even if IHC had preserved its emails and safety meeting checklists closest in time to the accident (it did not) and destroyed only those documents generated more than a year before the accident, spoliation sanctions would still be proper. Relevant documents dating to the beginning of the two-year project would have still reflected IHC's observations and impressions regarding traffic volume, backups, and the possible need for additional safety measures to protect the motorist public from collisions within the zone as it was configured. Importantly, the construction zone here maintained the same boundaries and configuration—*i.e.*, a two-lane, two-way (or "head-to-head") configuration—*throughout* the two-year project. Unlike the old track records in *Stevenson*, IHC's project documents were material regardless of proximity in time to the accident.

Similarly, elsewhere in its Brief, IHC mischaracterizes the scope of information that it claims should have been preserved. By referring to this action as a simple "motor vehicle accident," IHC endeavors to minimize the scope of information that it should have known would

likely be relevant to this lawsuit.  (Dkt. 73-1 at 27.)  But it is not reasonable to expect that discovery in subsequent litigation resulting from a fatal accident will be limited to information surrounding the accident itself, *e.g.*, emails discussing the accident.  As the prime contractor for the construction project in which this fatal rear-end accident occurred, IHC should have anticipated that subsequent litigation arising from the accident would raise substantial questions about the progress of the project, the conditions and observations of traffic (e.g., backups) within the project, the reasonableness of those conditions, and the foreseeability of rear-end collisions resulting from those conditions.  Accordingly, IHC had a duty to take reasonable steps to preserve all documents relating to traffic and construction conditions in the project as of July 31, 2016, when the accident occurred.

## III.  THERE IS NO GENUINE DISPUTE THAT IHC FAILED TO PRESERVE RELEVANT EVIDENCE FOR THE PURPOSE OF DEPRIVING PLAINTIFFS OF THE USE OF THAT EVIDENCE AT TRIAL.

The Court should also reject IHC's contention that Plaintiffs have failed to set forth sufficient evidence to show that IHC acted in bad faith and for the purpose of depriving Plaintiffs of the use of evidence in this case.  Again, the Court should view the evidence of IHC's bad faith based on the "totality of the record."  *GN Netcom v. Plantronics*, 2016 U.S. Dist. LEXIS 93299, at *25 (D. Del. July 12, 2016).  The totality of the evidence here is substantial and egregious.  Such uncontroverted evidence includes the following:

- IHC does not deny that it failed to implement a litigation hold of any kind even though its "standard operating procedure" did not include the preservation of emails and despite twice receiving express instructions to preserve all relevant documents and ESI from NDOR and Plaintiffs' counsel;

- IHC does not deny that Mr. Maccioli sent emails to IHC's field personnel immediately after the July 31, 2016, accident evidencing his deliberate intent to shield evidence so that it would not be "discoverable" in litigation;

12

- IHC does not deny that all of its weekly safety meeting checklist forms for this project were inexplicably deleted from its server even though IHC employees could only have deleted such documents manually;

- IHC does not deny that Mr. Maccioli inexplicably failed to disclose the majority of IHC's documents in the routine course of discovery in this case;

- IHC does not deny that Mr. Maccioli provided false or misleading information in IHC's written discovery disclosures and responses to ensure that all queries in this case came through him;

- IHC does not deny that Mr. Maccioli misrepresented the results of the October 2017 ESI search to his counsel, Plaintiffs, and the Court—first stating that the search yielded no additional emails, and then stating in a sworn affidavit that the search yielded only five additional emails—when the search actually yielded hundreds of relevant emails;

- IHC does not deny that Mr. Maccioli "kept [IHC's IT Manager] at arms' length" during the process of gathering ESI and providing it to IHC's counsel to ensure that his false representations were not uncovered;

- IHC does not deny that Mr. Maccioli manipulated the October 2017 ESI search to exclude his own emails and all emails sent before July 31, 2016, without disclosing that fact to his own counsel, Plaintiffs, or the Court;

- In its Brief, IHC has fundamentally changed its story—for example, in its recent opposition to Plaintiffs' Motion for Attorneys' Fees and Costs, IHC falsely claimed that it failed to disclose its emails before December 2017 because Mr. Maccioli did not know that the emails were hosted by a third-party and not on IHC's server (Dkt. 163 at 5), but now IHC appears to admit that Mr. Maccioli did, in fact, search IHC's emails on "October 17th" of 2017 (Dkt. 173-1 at 7), a full month before he executed a sworn affidavit misrepresenting the scope and results of that email search in November 2017.

Far from rebutting this material evidence with its own to raise a genuine question as to the bad faith purpose motivating its failure to preserve evidence, IHC's Brief is rife with speculation, inconsistent and unsupported statements, and outright falsehoods. The Court should grant Plaintiffs' Motion accordingly.

### A.    IHC's Failure To Implement A Legal Hold Or Otherwise Preserve Emails Was Not Justified By Its Purported Belief That It Had Done Nothing Wrong.

IHC does not deny that it has still failed to implement a litigation hold of any kind to this day even though its "standard operating procedure" would not operate to preserve project-related

emails, text messages, or any other documents that IHC did not "design to be part of the record." Nor does IHC deny that it failed to implement a legal hold or otherwise act to preserve its emails and other project-related documents not ordinarily saved to its server after receiving a preservation letter from Plaintiffs' counsel and notice from NDOR that it had itself implemented a litigation hold due to the severity of the crash.  Instead, IHC attempts to justify its failures through meritless and unsupported assertions that miss the point entirely.

First, IHC argues that it had no reason to implement a legal hold to preserve its project emails and other unpreserved documents because Plaintiffs' January 2017 preservation letter did not use the phrase "litigation hold."  (Dkt. 173-1 at 14.)  But the letter expressly requested that IHC provide a copy of its insurance policy and preserve "all documents" and "electronically stored information" that "may have any relevance to the wrongful deaths of the Pals family." (Index Ex. G at 1, Dkt. 166-7.)  After receiving this letter, IHC continued to permanently delete documents pursuant to its ordinary business practices.  (*Id*. Ex. B. at 239, 273-74, Dkt. 166-2.) Such willing disregard for Plaintiffs' preservation notice evidences IHC's bad faith.

Second, IHC argues that it did nothing after receiving notice from NDOR that it had placed the project on a legal hold because the NDOR manager who provided notice allegedly "[s]aid [the anticipated lawsuit] shouldn't affect IHC."  (IHC Br. at 41.)  But, again, IHC's own self-serving interpretation of NDOR's comments (that NDOR denies ever making) does not justify IHC's decision to not implement a legal hold.  *Supra* Part I.

In sum, IHC's failure to implement a legal hold of any kind to this day is evidence of its bad faith intent to ensure that evidence would be destroyed and not disclosed to Plaintiffs.

14

**B.    IHC Does Not Address Mr. Maccioli's Email Instructing IHC Personnel To Hide Evidence So It Would Not Be "Discoverable" In This Lawsuit.**

In its Brief, IHC does not acknowledge, let alone rebut, the emails Mr. Maccioli sent to

IHC's field personnel hours after this fatal crash instructing them to make sure IHC does not

later have "to give [evidence] to anybody" and to ensure that such evidence would not later be

"discoverable" in this lawsuit.  (Pls.' Br. at 5, Dkt. 165 (citing Dkts. 166-4 & 166-5).)  There is

no credible explanation for this email other than IHC's bad faith intent to deprive Plaintiffs of the

use of evidence in this case.

**C.    IHC Has Not Raised A Genuine Dispute That It Deleted The "Weekly Safety Meeting Checklist" Forms From Its Server.**

In its Brief, IHC does not deny that the weekly safety meeting checklist forms were saved

to the project folder on its server and yet are now gone.  Nor does IHC deny that documents

saved to the project folder can generally only be deleted through manual and purposeful deletion.

As Plaintiffs' explained in their Brief, the only plausible explanation is that IHC intentionally

deleted these key documents at some point after the project was completed in November 2016.

(*See* Pls.' Br. at 26-30, Dkt. 165.)  IHC now recognizes the significance of the deleted records

and makes a number of arguments, none of which create a genuine dispute as to IHC's bad faith.

First, IHC claims that these records "are missing either as a result of a mere mistake by

IHC employees, or as a result of a malware attack on IHC's server."  (Dkt. 173-1 at 25.)  But

IHC does not explain what this purported "mistake" is, and does not offer any evidence of a

"malware attack" other than yet another affidavit from Tony Maccioli, in which he speculates

(without any further support) that "[i]t is *possible* that these documents were *potentially* victim to

a ransom ware attack IHC encountered in 2016."  (Dkt. 173-2 ¶ 4 (emphasis added).)  Other than

Mr. Maccioli's speculative affidavit, IHC does not offer any independent evidence or record of a

purported "ransom ware attack" from 2016, let alone any evidence that would raise a material

question of disputed fact as to whether such an attack (if there was an attack) plausibly targeted and deleted IHC's weekly safety meeting checklist forms for this particular project while leaving all of its other project files intact.  *See, e.g.*, *Schmidt v. City of Bella Villa*, 557 F.d 564, 571 (8th Cir. 2009) (holding that a party cannot create a genuine issue of material fact "on the basis of speculation, conjecture, or fantasy"); *Pavon v. Britten*, 2015 U.S. Dist. LEXIS 104593, at *2 (D. Neb. Aug. 10, 2015) ("[T]he nonmovant must substantiate his allegations with 'sufficient evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy").

Nor does IHC explain why it waited until after Plaintiffs filed their sanctions motion to disclose that its relevant project documents may have been compromised by a purported "malware attack."  For example, IHC failed to mention this possible "malware attack" during its Rule 30(b)(6) deposition and has never before even suggested that it "encountered" a "ransom ware attack . . . in 2016."  (*See generally* Dkt. 166-2.)  In fact, IHC has stated the opposite, *i.e.*, that none of its "electronic files [have been] deleted/destroyed."  (Dkt. 166-15 at p. 4.)  *Cf. Stooksbury v. Ross*, 2011 U.S. Dist. LEXIS 133999, at *14 (D. Tenn. Nov. 21, 2011) (finding that contradictory statements "constitute[d] an attempt to create a sham fact issue").  In short, IHC offers no evidence to raise a genuine dispute as to whether these key safety records were deleted by "mere mistake" or a "malware attack" as it speculates in its Brief.  Purposeful deletion remains the only credible explanation.  *Alabama Aircraft Industries v. Boeing, Inc.*, 319 F.R.D. 730, 746 (N.D. Ala. 2017) (finding bad faith destruction of evidence when information is destroyed by "an affirmative act which has not been credibly explained").

Second, IHC argues that the Court should deny Plaintiffs' Motion because the missing safety meeting checklists are "safety document[s] referring to the safety of IHC employees" and

do not relate "specifically to the traveling public." (Dkt. 173-1 at 37.) But IHC's attempt to re-define the purpose of these forms is belied by the form itself, which is clearly intended to reflect IHC's contemporaneous observations, impressions, and recommendations relating to *traffic* conditions and safety recommendations. IHC's *ex-post* efforts to recharacterize the missing forms are therefore unavailing as the template checklist plainly shows:

IHC Safety & Environmental Manual
I-80, Big Springs – Brule / Project No. S-80-3(1056)

**Weekly Safety Meeting Checklist**

Job Name and Number: _____

Supervisor Conducting Safety Meeting: _____

Spanish Translator, If There Was One: _____

Date: _____  Time: _____  Length of Meeting: _____

| Topics: | Check Box When Completed |
|---|---|
| Safety issues from last week Accidents, injuries, incidents, and close calls............................................ | ☐ |
| Did anyone get hurt last week and fail to report it?.................................................................... | ☐ |
| Safety issues for new work this week ....................................................................................... | ☐ |
| Safety issues regarding changing weather. ............................................................................... | ☐ |
| Remind everyone to watch for equipment and delivery trucks......................................................... | ☐ |
| Watch out for wet batch trucks................................................................................................ | ☐ |
| Review Activity Hazard Analysis for this week's work items. (See Project Management Checklist – High Hazard Work)........................................................................................................................... | ☐ |
| Discuss any equipment issues.................................................................................................. | ☐ |
| Discuss any material handling issues like forms, baskets, other embeds, etc................................... | ☐ |
| Discuss any changes in traffic conditions. ................................................................................ | ☐ |
| Any spills or environmental issues? If yes please list below in the special topics section. .................. | ☐ |
| Does everyone have the right PPE?........................................................................................... | ☐ |
| Housekeeping issues.............................................................................................................. | ☐ |
| Employee safety comments and / or recommendations................................................................. | ☐ |
| Acknowledge any good behaviors observed by a group or individual .............................................. | ☐ |
| Did you get a signup sheet?..................................................................................................... | ☐ |
| How many employees did you subject to a random drug test this meeting? .................................._____ | |

Write in any comments or special topics discussed below:

_____

_____

_____

_____

1) New Ideas: _____  ☐

2) Improvements Last Week:_____  ☐

3) Improvements Needed:_____  ☐

_____          _____
Date Completed                              Supervisor's Signature

(Fax forms to corporate safety & environmental director immediately after meeting)

78

Exhibit H

IHC009878

17

(Index Ex. H, Dkt. 166-8 at p. 78.)  As the template form shows, the deleted safety records are intended to reflect IHC's candid impressions and observations regarding traffic accidents and traffic conditions in the context of internal safety discussions.  IHC has not raised a genuine dispute as to its bad faith by redefining the purpose of these deleted records after the fact.

Third, IHC claims that the weekly safety meeting checklists do not relate to the relevant traffic safety issues in this case (despite the checklists themselves) because there are a number of other documents that also relate to these issues.  (Dkt. 173-1 at 37.)  But these other documents are either not internal IHC documents or, even if they are, relate to traffic safety issues only tangentially.  For example, the first document IHC lists is the "NDOR Daily Traffic Control Inspection Form," which is an NDOR document that was completed daily by the traffic control subcontractor D.P. Sawyer.  While the Daily Inspection Forms provide a space for the D.P. Sawyer surveillance employee's "notes/comments," there is no express prompt regarding traffic accidents, traffic conditions, or safety recommendations like in the deleted weekly safety meeting checklists.  Nor does it reflect IHC's present impressions.  Similarly, the other weekly meeting forms/minutes noted by IHC are not about traffic conditions and safety specifically like the weekly safety meeting checklists, but instead reflect discussions about "weekly progress" and "pre-work" issues.  (*See* Dkt. 173-1 at 37-38.)

These forms are not substitutes for the deleted weekly safety meeting checklists, which—as far as the record reveals—are the only project safety records intended to address safety issues relating to traffic conditions and traffic safety recommendations.  Moreover, the deleted checklists are the only traffic records of any kind purely internal to IHC.[3]

---

[3] This is significant.  IHC did not delete other traffic records in its possession that DPS and NDOR also possessed (and could therefore also produce to Plaintiffs) because such deletion

Fourth, IHC claims that "[e]arly in this litigation, Mr. Maccioli identified the fact that these checklists were not found on the server for IHC." (Dkt. 173-1 at 37.) Specifically, Mr. Maccioli claims that IHC's counsel advised Plaintiffs in correspondence dated November 30, 2017, that IHC was "searching for the Weekly Safety Meeting Checklists." (Dkt. 173-2 ¶ 4.) But IHC fails to inform the Court that IHC's November 30 correspondence was a response to Plaintiffs' counsel's earlier correspondence identifying IHC's failure to produce the checklists and demanding that they be produced immediately. In other words, it is not true that IHC unilaterally disclosed the fact that its safety checklists were missing. To the contrary, IHC did not proactively address the missing checklists, and would never have addressed the missing checklists at all had Plaintiffs' counsel not figured out themselves that the checklists should exist but had not been produced. (Pls.' Supp. Index Ex. AE, Nov. 16, 2017, Ltr. from M. Stinson to D. Shuck.)

Fifth, IHC claims that its bad faith is belied by the fact that it "has gone to the extent to hiring [sic] a third party computer consultant who was also unable to find the Weekly Safety Meeting Checklists." (Dkt. 173-1 at 38.) Tellingly, IHC does not state when it hired this consultant, and does not explain why it failed to mention that it had hired this consultant during the Rule 30(b)(6) document preservation deposition in May or during the meet-and-confer conference between Plaintiffs' counsel and counsel for IHC in June. It appears that IHC hired this purported consultant after receiving Plaintiffs' Sanctions Motion. IHC's efforts to manufacture evidence in response to Plaintiffs' motion cannot create a genuine and material

---

would have become known to Plaintiffs and been pointless. It is telling that the only project records deleted from IHC's server were both critical to this case and purely internal to IHC.

19

question regarding its bad faith deletion of critical safety records. *See Stooksbury*, 2011 U.S. Dist. LEXIS 133999, at *14 (rejecting party's efforts to "create a sham fact issue").

In sum, there is no genuine dispute that IHC purposefully deleted the safety meeting checklists from its server for the purpose of depriving Plaintiffs of the use of that evidence.[4]

### D.     There Is No Genuine Dispute That IHC Made Knowingly False Representations Throughout The Discovery Period.

In its Brief, IHC does not raise a genuine and material question as to whether it has made knowingly false representations to Plaintiffs and the Court throughout this case. For example, IHC does not deny that it provided knowingly false disclosures and responses to Plaintiffs' discovery requests for the purpose of channeling subsequent discovery through Mr. Maccioli (who has spearheaded IHC's discovery tactics). As another example, IHC does not deny that Mr. Maccioli knew IHC's emails were not saved to the IHC server throughout the five-month period in which IHC's counsel continued to represent that all responsive emails and documents had been produced. Similarly, IHC does not deny that Mr. Maccioli knew his November 2017 affidavit was false when he stated that Plaintiffs' ESI search terms yielded only five email results. (*See* Pls.' Br. at 12-16.)

The closest IHC comes to even addressing this last fact is its attempt to explain why Mr. Maccioli's story changed between October 2017 (when IHC claimed there were no emails responsive to Plaintiffs' search terms) and November 2017 (when Mr. Maccioli executed an affidavit stating there were only five such emails). IHC now claims that Mr. Maccioli "completed a secondary search of one of the 54 terms as the term 'NDOR' was inadvertently

---

[4] Again, if this Court finds that IHC has somehow raised a genuine dispute as to its bad faith, the question should be referred to the jury. Pls.' Br. at 21, Dkt. 165 (citing authority); *see also* Fed. R. Civ. P. 37(e)(2), Adv. Committee Notes (2015 Amendment) (describing procedure to be used if the "court were to conclude that the intent finding should be made by a jury").

misspelled as 'NOOR' during the first search," and thus the first search did not capture these five emails "with subject: 'NDOR on Litigation Hold for 7.31.16 Fatal Accident.'"  (Dkt. 173-1 at 40-41.)  This is a red-herring.  First, IHC does not explain or deny Mr. Maccioli's failure to disclose the hundreds of other emails that hit on the search terms Ms. Miranowski applied in October 2017, including the emails that Ms. Miranowski expressly identified as having been drawn in by the October search during her deposition.  Second, IHC's new story does not make any sense.  The five emails in question should have been drawn in regardless of the purported misspelling of "NDOR" because they hit on the terms "Accident" and "traffic w/5 plan," which were also included in Plaintiffs' 54 proposed search terms.  (*Compare* Dkt. 166-6 *with* Dkt. 166-17 at pp. 7-8.)

Moreover, it is significant that IHC now admits Mr. Maccioli was aware of the location of IHC's emails and searched them *before* submitting his November 2017 affidavit.  In response to Plaintiffs' Motion for Attorneys' Fees and Costs, IHC claimed falsely that Mr. Maccioli's false statements made in his November affidavit were innocent because he did not become aware of the location of IHC's emails until a month later in December 2017 while preparing for the scheduled Rule 30(b)(6) deposition regarding document preservation.  (Dkt. 163 at 5.)  IHC's false statements made in opposition to Plaintiffs' Motion for Attorneys' Fees further evidence its bad faith and the need for further sanctions.

There is no genuine dispute that IHC made knowingly false statements to Plaintiffs and the Court regarding the completeness of its document production.  Standing alone, this uncontroverted fact shows IHC's bad faith and warrants severe and dispositive sanctions.

**E.    IHC Does Not Raise A Genuine Dispute That IHC Secretly Manipulated The October 2017 Email Search To Limit The Results.**

Finally, there is no genuine dispute that IHC secretly manipulated the October 2017 email search to exclude Mr. Maccioli's emails[5] (despite identifying him as its sole custodian with relevant information) and to exclude all emails from before July 31, 2016 (despite Plaintiffs' express requests for emails and other ESI from before the accident).  The Court should reject IHC's efforts to explain away these actions after-the-fact.

First, the Court should reject IHC's claim that it excluded Mr. Maccioli from the email search because "he had access to his emails" and had already searched and produced them as documents bearing Bates-ranges IHC 29126 through IHC 29178.  This contention not only contradicts Mr. Maccioli's prior deposition testimony that he limited his document search exclusively to the "project folder" on IHC's server, but it also begs the question as to why Mr. Maccioli did not disclose these emails before January 2018 if he had already searched and identified them.  Moreover, IHC does not explain how it is that the identified emails came from Mr. Maccioli when many of the emails within the cited Bates-range do not even include him. (*See* Pls.' Br. at 19.)  IHC is again making up facts to justify its misconduct.

Second, the Court should reject IHC's claim that Mr. Maccioli limited the date range of the October 2017 search because the "directions provided in [Plaintiffs'] informal request included the instruction that IHC was to perform the search of the terms between the dates of July 30, 2016 and August 7, 2016, which Mr. Maccioli did . . . "  (Dkt. 173-1 at 40-41.)  This statement is again false.  ***In addition to*** the 54 search terms, Plaintiffs asked that IHC ***also*** retrieve all emails sent, received, or trashed on and between those dates to ensure that all relevant emails sent immediately before and after the accident were produced ***regardless of search terms***.

---

[5] Mr. Maccioli's emails have still not been searched or preserved to this day.

22

(Pls.' Index Ex. Q at 9, Dkt. 166-17.)  IHC's new position that it only searched within that date range is, again, patently false.  IHC plainly understood this distinction at the time, as the five emails they produced fell <u>after</u> August 7, 2016.  This latest explanation by IHC has no reasonable basis and directly contradicts its contemporaneous actions.

## <u>CONCLUSION</u>

If anything, IHC's responsive brief reaffirms the need for dispositive sanctions for its egregious and ongoing abuses of the judicial process.  Plaintiffs respectfully ask the Court to enter default judgment as to liability against IHC for its intentional spoliation of evidence and knowingly false statements made throughout this litigation.  In the alternative, Plaintiffs respectfully request that the Court order other sanctions as it deems just and proper, including, but not limited to, provision of an adverse inference instruction to the jury at the time of trial.

Dated:  July 18, 2018

PLAINTIFFS KATHRYNN PALS AND
GORDON ENGEL, IN THEIR CAPACITIES
AS PERSONAL REPRESENTATIVES


By:  _/s/ Michael D. Stinson_____
     Eric A. O. Ruzicka (*pro hac vice*)
     Michael D. Stinson (*pro hac vice*)
     V. Skip Durocher (*pro hac vice*)
     Nathan J. Ebnet (*pro hac vice*)
     DORSEY & WHITNEY LLP
     50 South Sixth Street, Suite 1500
     Minneapolis, MN 55402-1498
     Telephone:  (612) 340-2600
     Facsimile:  (612) 340-2868
     ruzicka.eric@dorsey.com
     durocher.skip@dorsey.com
     stinson.mike@dorsey.com
     ebnet.nathan@dorsey.com

         AND

     Thomas A. Grennan (#15675)
     GROSS & WELCH, PC LLO
     1500 Omaha Tower
     2120 South 72nd Street
     Omaha, NE 68124
     Telephone (402) 392-1500
     tgrennan@grosswelch.com

     ATTORNEYS FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 18, 2018, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Danny C. Leavitt for Plaintiffs Juan Paublo Velez, Martiniana Velez, and Paola Velez

Terrance O. Waite for Defendants Tony Weekly Jr. and Bohren Logistics, Inc.

Patrick R. Guinan, Tom Culhane, and Bonnie Boryca for Defendant D.P. Sawyer, Inc.

Daniel B. Shuck for Defendant Interstate Highway Construction, Inc.

I further certify that there are no non-CM/ECF participants requiring service by postal mail, and that all parties are represented by counsel who have been served through the Court's CM/ECF system.

/s/ Michael D. Stinson
Michael D. Stinson
Attorney for Plaintiffs