# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KATHRYNN PALS, et al.;<br><br>        Plaintiffs,<br><br>vs.<br><br>TONY WEEKLYJR., BOHREN LOGISTICS, INC., INTERSTATE HIGHWAY CONSTRUCTION, INC., and D.P. SAWYER, INC.,<br><br>        Defendants. | MEMORANDUM<br>AND ORDER<br><br>8:17CV27 |
| JUAN PAUBLO VELEZ, MARTINIANA VELEZ, and PAOLA VELEZ,<br><br>        Plaintiffs,<br><br>vs.<br><br>BOHREN LOGISTICS, INC., TONY WEEKLYJR., INTERSTATE HIGHWAY CONSTRUCTION, INC., and D.P. SAWYER INC,<br><br>        Defendants. | 8:17CV175 |

This matter is before the Court on the Motion for Summary Judgment filed by Defendant D.P. Sawyer, Inc. ("Sawyer"), ECF No. 201;[1] the Motion for Summary Judgment filed by Defendant Interstate Highway Construction, Inc. ("IHC"), ECF No. 207; and the Motion to Stay All Further Proceedings filed by Plaintiffs Kathryn Pals and Gordon Engel, ECF No. 324. For the reasons stated below, the Motions for Summary Judgment will be granted and the Motion to Stay will be denied.

---

[1] ECF Filing Number references are to Case No. 8:17cv27.

1

**BACKGROUND**

In February 2015, the Nebraska Department of Roads ("Department") contracted with IHC for the removal and replacement of the roadway and shoulders on a section of Interstate 80 ("I-80"). *See* Contract, ECF No. 202-7, Page ID 2769-70. The project was known as the Big Springs Project ("Project"). The Department owned the Project and designed the Project's Traffic Plan. The Traffic Plan was part of the Project's "Plans for Construction." In 2016, the Traffic Plan closed the westbound lanes of I-80 and diverted westbound traffic across the median into the eastbound lanes, resulting in head-to-head traffic in the two eastbound lanes.[2] IHC contracted with Sawyer to implement the Traffic Plan and provide 24-hour surveillance of the temporary traffic control devices. IHC and Sawyer could not unilaterally modify or vary from the Traffic Plan.

On July 31, 2016, at around 11:30 a.m., the Pals vehicle entered the Project traveling west on I-80. The posted speed limit was 65 miles-per-hour. Other vehicles in front of the Pals vehicle had slowed or come to a stop in the section of the Project where traffic was operating in the head-to-head configuration. Eyewitnesses described the traffic backup as at least a half-mile long, Cavalzani Depo, ECF No. 202-3, Page ID 2392-93, and as far as the eyewitness could see, Albergo Depo., ECF No. 202-4, Page ID 2464. At approximately mile marker 113 within the Project, Defendant Tony Weekly, Jr., driving a semi-truck, struck the Pals vehicle from behind. Crawford Investigation, ECF No. 232-9, Page ID 4512. Jamison, Ezra, Kathryne, Violet, and Calvin Pals died as a result of the collision.

---

[2] In the 2015 phase, eastbound and westbound traffic shared the westbound lanes in a head-to-head configuration.

Weekly had been a truck driver for 14 years and was employed by Bohren Logistics, Inc. ("Bohren"). At the time of the accident, Weekly was in full control of his semi-truck, knew he was in a construction zone, and would have stopped his truck safely had he perceived the slowed traffic in time.

Plaintiffs Kathryn Pals[3] and Gordon Engel[4] filed a wrongful death action against Weekly, Bohren, IHC, and Sawyer. Kathryn Pals and Gordon Engel allege Defendants' negligence caused the death of Jamison, Ezra, Kathryne, Violet, and Calvin Pals. Defendants Sawyer and IHC moved for summary judgment, seeking dismissal of Plaintiffs'[5] wrongful death and negligence claims against them (Counts VI-IX).

## STANDARD OF REVIEW

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). "Summary judgment is not disfavored and is designed for every action." *Briscoe v. Cty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc)). In reviewing a motion for summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in that party's favor." *Whitney v.*

---

[3] Kathryn Pals is the personal representative of the estates of Jamison and Ezra Pals.

[4] Gordon Engel is the personal representative of the estates of Kathryne, Violet, and Calvin Pals.

[5] For purposes of this Memorandum and Order references to Plaintiffs refer only to Kathryn Pals and Gordon Engel as all claims against Interstate Highway Construction, Inc., and D.P. Sawyer, Inc., in *Velez, v. Bohren Logistics, Inc.*, 8:17cv175, were dismissed on September 30, 2019, pursuant to a Motion filed by the Velez Plaintiffs.

3

*Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004)). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The moving party need not produce evidence showing "the absence of a genuine issue of material fact." *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (quoting *Celotex*, 477 U.S. at 325). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042). "[T]here must be more than the mere existence of some alleged factual dispute" between the parties in order to overcome summary judgment. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

In other words, in deciding "a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Wagner*, 788 F.3d at 882 (quoting *Torgerson*, 643 F.3d at 1042). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no "genuine issue of material fact" for trial and summary judgment is appropriate. *Whitney*, 826 F.3d at 1076 (quoting *Grage v. N. States Power Co.-Minn.*, 813 F.3d 1051, 1052 (8th Cir. 2015)).

## DISCUSSION[6]

"To recover in a negligence action, 'a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages.'" *Pohl v. Cty. of Furnas*, 682 F.3d 745, 751 (8th Cir. 2012) (quoting *A.W. v. Lancaster Cty. Sch. Dist. 0001*, 784 N.W.2d 907, 913 (Neb. 2010)).

IHC and Sawyer argue they did not owe a duty to Plaintiffs and that Plaintiffs cannot establish that Sawyer's and IHC's actions caused Plaintiffs' damages. IHC and Sawyer also argue they are entitled to summary judgment because they followed the Department's Traffic Plan, they had no duty to judge the sufficiency of the Traffic Plan, and they had no duty to anticipate Weekly's negligence. Finally, they argue that acquired immunity should bar the claims against them.

Plaintiffs do not contend that the 2015 Traffic Plan was defective nor that IHC and Sawyer had a unilateral duty to judge, revise, or modify the Traffic Plan. Instead, Plaintiffs argue that IHC and Sawyer had a duty to *monitor* the Traffic Plan continually and to *report*

---

[6] The Court has stated the facts in the Discussion section in the light most favorable to the Plaintiffs, as the nonmoving parties, and all factual disputes are assumed resolved in Plaintiffs' favor.

5

frequent traffic backups to the Department, which likely would have resulted in changes to the Traffic Plan, such as the addition of "prepare to stop" signage.

Assuming, without deciding, that IHC and Sawyer owed a duty to Plaintiffs, Plaintiffs' claims against IHC and Sawyer fail on the basis of causation.

**I. Causation**

To satisfy the element of causation, a plaintiff must demonstrate that a defendant was the "proximate cause" of the plaintiff's injury. *King v. Crowell Memorial Home*, 622 N.W.2d 588, 594 (Neb. 2001). "To demonstrate proximate cause in Nebraska a plaintiff must show that '(1) [w]ithout the negligent action, the injury would not have occurred, commonly known as the 'but for' rule; (2) the injury was a natural and probable result of the negligence; and (3) there was no efficient intervening cause.'" *Pohl*, 682 F.3d at 752 (citing *Wilke v. Woodhouse Ford, Inc.*, 774 N.W.2d 370, 382 (Neb. 2009)). "[A]n efficient intervening cause is new and independent conduct of a third person, which itself is a proximate cause of the injury in question and breaks the causal connection between original conduct and the injury." *Pohl*, 682 F.3d at 754 (citing *Zeller v. Cty. of Howard,* 419 N.W.2d 654, 658 (Neb. 1988)).

IHC and Sawyer argue that, pursuant to Nebraska's range-of-vision rule, the Court should find that Weekly was negligent as a matter of law and that his negligence was an efficient intervening cause that severed any causal connection between any negligence on the part of Sawyer and IHC and the Plaintiffs' injuries. Plaintiffs argue that the "sudden stop" and "indiscernible object" exceptions preclude application of the range-of-vision rule and, even if Weekly was negligent, his negligence was not an efficient intervening cause.

The Court finds Weekly was negligent as a matter of law and his negligence was an efficient intervening cause of Plaintiffs' injuries.

A. <u>Weekly's Negligence</u>

Under Nebraska's range-of-vision rule, "a motorist is deemed negligent as a matter of law if he or she operates a motor vehicle in such a manner as to be unable to stop or turn aside without colliding with an object or obstruction in the motorist's path within his or her range of vision." *Martin v. Roth*, 568 N.W.2d 553, 556 (Neb. 1997) (quoting *Traphagan v. Mid–America Traffic Marking*, 555 N.W.2d 778, 785 (Neb. 1996)). "[A] following driver need not anticipate that a motorist will suddenly stop or slow on a roadway and . . . where a dispute exists as to whether such a stop was made, the issue of the driver's negligence is for the jury." *Id.* (citation omitted). "Strict application of the range of vision rule as a matter of law is inappropriate where a reasonable dispute exists on the question of whether the operator of a vehicle exercised the requisite care and prudence under the circumstances." *Kozlov v. Associated Wholesale Grocers, Inc.*, No. 4:10CV3211, 2014 WL 5334651, at *4–5 (D. Neb. Oct. 20, 2014) (citing *Stinson v. City of Lincoln*, 617 N.W.2d 456, 467 (Neb. Ct. App. 2000)).

Similarly, "[t]he range of vision rule does not apply 'where the object cannot be observed by the exercise of ordinary care in time to avoid a collision.'" *Id.* (quoting *Mantz v. Cont'l W. Inc. Co.*, 422 N.W.2d 797, 802 (Neb. 1988). "An exception to [the range of vision] rule exists when a motorist, otherwise exercising reasonable care, does not see an object or obstruction sufficiently in advance to avoid colliding with it because it is similar in color to the road surface and relatively indiscernible." *Martin*, 568 N.W.2d at 556 (citations omitted); *see also German v. Swanson*, 553 N.W.2d 724, 726 (Neb. 1996) ("We have recognized an exception to the range of vision rule when the person or object is not

7

discernible, precluding the motorist from seeing the person or object in time to stop."). The indiscernible object exception does not apply where a motorist knew of or should have known of the presence of the object on the road. *Martin*, 568 N.W.2d at 557.

In support of their argument that the "sudden stop" exception to the range-of-vision rule should apply, Plaintiffs and Weekly both rely on Weekly's and other motorists' descriptions of the traffic stop as "abrupt." On the day of the collision, Jay Albergo was driving westbound in the construction zone. Albergo Depo., ECF No 233-13, Page ID 6228. Albergo's co-worker John Calvanzani was following him, and there were two vehicles between Calvanzani's vehicle and the Pals vehicle. *Id*. Albergo testified that he came to "an abrupt stop" and had been stopped only about five seconds before Weekly's vehicle collided with the Pals van. *Id*. Albergo described the stop as "it slowed down and then, boom, stopped." *Id*. Calvanzani described the stop as "[i]t wasn't abrupt, but it was a brake check. It came up pretty quick." Calvanzani Depo., 202-3, Page ID 2391. After stopping, Calvanzani looked in his rearview mirror to see if anyone was "having a problem to stop" because although it wasn't as if everyone's tires were screeching "it was a heavy brake coming to a complete stop in the traffic," a "hard stop." *Id*. at 2394. Yet Calvanzani testified that the time that elapsed between his stop and the collision was "probably a couple minutes." *Id*. at 2395. Juan Velez, who was directly in front of the Pals vehicle, testified that when he noticed the vehicles in front of him had stopped, he slowed down and came to a complete stop. Velez Depo., ECF No 202-2, Page ID 2343-44. As Sawyer points out, Velez testified he was stopped for "a short period of time" but more than a few seconds "perhaps a minute or two" prior to the collision. *Id*.

Based on the evidence in the record, the Court concludes that no reasonable finder of fact could determine that the Pals vehicle came to a sudden stop such that the "sudden stop" exception to the range-of-vision rule should apply.

In support of their argument that the "indiscernible object" exception to the range-of-vision rule should apply, Plaintiffs note that their expert, Kevin Rider, Ph.D., PE, opines: "[o]n straight and level roadways, a perceptual looming effect inhibits drivers from readily identifying stopped and slow-moving vehicles in the forward roadway." Rider Report, ECF No. 233-31, Page ID 6490. Rider states that absent conspicuous visual cues and warnings to alert drivers of "the likelihood of stopped vehicles on I-80, the perceptual looming effect would have inhibited the ability of westbound drivers such as Mr. Weekly to detect, identify, and brake to avoid the collision with the stopped vehicles." *Id.* at 6493. Rider opines that Weekly may have been only about 308 feet away from the Pals vehicle before recognizing the hazard due to the "perceptual looming effect." *Id.* at 6500. According to Rider, "[t]he amount of time, or Perception-Reaction Time (PRT), for a driver to detect, identify and initiate a driving response to unexpected events or hazards has been shown to be between 1.5 to 2.5 seconds. *Id.* at 6492-93. Rider also states that

> On limited-access roadways such as interstates with a long and unobstructed line of sight, drivers may also perform non-driving related tasks, such as eating and drinking, reading billboards, and adjusting the radio and temperature controls. Each of these tasks require the driver to look away from the forward roadway, and an empirical study reported that car-following drivers looked away from the forward roadway and lead car about 30% of the time. These glances away from the vehicle path are generally timed to coincide with a low probability of the occurrence of an attention-requiring event, and to affect driving control as little as possible. The mean glance duration for visual tasks away from a straight rural roadway is between 1.25 and 1.5 seconds, before the driver returns his gaze back to the forward roadway.

9

*Id.* at 6492. Thus, according to Rider, a driver such as Weekly may have traveled for as long as 4 seconds, or 381 feet at 65 miles per hour, before beginning to brake in response to stopped vehicles. *Id.* at 6493. Plaintiffs also point out that Sawyer's expert, John Goebelbecker. P.E., recognized that Weekly's semi-truck would have had a brake lag of up to one-half second. Goebelbecker Report, ECF No. 233-33, Page ID 6524.

Accepting Rider's and Goebelbecker's scientific theories as valid for purposes of the pending Motions, the Court concludes that the "indiscernible object" exception to the range-of-vision rule is inapplicable. There is no evidence that the Pals vehicle was indiscernible to a driver exercising reasonable care, which Weekly was not.[7]

The Court concludes that there is no genuine issue of material fact as to the application of the range-of-vision rule and that Weekly was negligent as a matter of law.

B. Foreseeability of Weekly's Negligence

Plaintiffs argue that even if Weekly was negligent as a matter of law, the causal connection between the negligence of IHC and Sawyer and the Plaintiffs' injuries is not severed. IHC and Sawyer argue that any causal connection between their alleged negligence and the Plaintiffs' injuries *is* severed, because Weekly's negligence was not reasonably foreseeable.

---

[7] Although Weekly knew he was in a construction zone with head-to-head traffic, his cruise control was set at approximately 62 miles per hour, and he looked away from the road for up to three seconds to adjust his beverage cup. Weekly Depo., ECF No. 233-30, Page ID 6459, 6471. Weekly collided with the Pals vehicle at a speed of approximately 59 miles per hour, *see* Pfeifer Report, ECF No. 233-35, Page ID 6623, indicating a failure to brake until immediately before impact. Photographs of the scene show Weekly's tires were all within the driving lane at the time of impact, demonstrating that he failed to execute an evasive steer maneuver despite the open shoulder area to his right. *See* Accident Report, ECF No. 232-8, Page ID 4514. All drivers except Weekly observed the traffic congestion and slowed or stopped their vehicles. Velez Depo, ECF No. 202-2, Page ID 2339-43; Albergo Depo., ECF No. 202-4, Page ID 2464; Cavalzani Depo, ECF No. 202-3, Page ID 2392-95.

"Nebraska law makes clear . . . that an intervening cause cuts off a tortfeasor's liability only when it is not foreseeable." *Pohl*, 682 F.3d at 754 (citing *Zeller,* 419 N.W.2d at 658); *see also Baumann v. Zhukov*, 802 F.3d 950, 956 (8th Cir. 2015) ("A driver who negligently creates a highway obstruction must reasonably foresee the probability of some injury from his negligent acts, not only from careful drivers of other vehicles but also from negligent ones, so long as the act of the other driver is not so 'extraordinary' as to be not reasonably foreseeable." (internal quotations and citation omitted)).

In *Baumann*, the alleged negligence of a defendant truck driver caused an accident on the interstate which resulted in a traffic backup nearly a mile long. 802 F.3d at 952. At approximately 5:14 a.m., while the Schmidt family was stopped at the end of the backup, a vehicle driven by Slezak struck the rear of the Schmidt vehicle without braking or attempting to avoid it. *Id.* at 953. Representatives of the Schmidt family alleged the negligence of the defendant truck driver caused the Schmidts' deaths, and the district court granted summary judgment for the defendant truck driver, holding that Slezak's negligence was an efficient intervening cause which severed any causal connection with respect to the truck driver's negligence. *Id.* The issue on appeal was whether Slezak's negligence was foreseeable. *Id.* at 954. Affirming the district court's decisions, the Eighth Circuit stated that it was the extraordinarily unforeseeable nature of Slezak's intervening negligence that distinguished *Baumann* from an earlier case.[8] *Baumann*, 802 F.3d at 956. Specifically, in *Baumann,* at least thirty-six minutes had passed since the initial accident;

---

[8] In *Heatherly v. Alexander*, 421 F.3d 638, 641 (8th Cir. 2005), a speeding truck driver pushed plaintiff's vehicle into defendant's truck which was unsafely parked on the shoulder of an exit ramp. *Baumann*, 802 F.3d at 956. The Eighth Circuit reversed the district court's grant of judgment as a matter of a law for the defendant, stating "[g]iven the evidence in the record, we cannot say that it would be unreasonable for a jury to determine that it was foreseeable that the parking of the MST truck on the shoulder of the exit ramp could result in a collision and injuries of the type suffered by the Heatherlys." *Heatherly*, 421 F.3d at 644.

11

numerous vehicles had stopped safely forming a line of traffic nearly a mile long; many vehicles—including the Schmidts' and the trucker in front of them—had activated their hazard lights; and emergency vehicles present and en route to the scene activated their lights and sirens resulting in a patently obvious hazard that, as plaintiffs admitted, would have been visible to approaching traffic for at least a mile. *Id.* Slezak was fatigued, driving well over the truck driver hours-of-service limit, and struck the back of the Schmidts' vehicle at seventy-five miles per hour without even attempting to apply the brakes. *Id.*

Even viewing the evidence in the light most favorable to the nonmoving parties and resolving factual disputes in their favor, Weekly's negligence was extraordinary and not a normal response to the situation created through any negligence on the part of IHC and Sawyer. Accordingly, Weekly's negligent act was not a reasonably foreseeable consequence of IHC's or Sawyer's alleged negligence and, as in *Baumann*, it was an efficient intervening cause of the accident.

It is not necessary for the Court to address other arguments raised by IHC and Sawyer, in light of the above conclusions.

## II. Motion to Stay All Further Proceedings

Plaintiffs have filed a Motion to Stay All Further Proceedings, ECF No. 324, pending resolution of a motion for sanctions related to IHC's alleged destruction of five employee laptops. The Court cannot infer that any evidence on the laptops could alter the Court's conclusions in this Memorandum and Order. Nor does it appear that the motion for sanctions will affect the resolution of the Motion to Bifurcate, ECF No. 246; Motion to Strike, ECF No. 225; Motion in Limine, ECF No. 211; or Motion in Limine, ECF No. 203. Therefore, Plaintiffs' Motion to Stay will be denied.

Accordingly,

IT IS ORDERED:

1. The Motion for Summary Judgment filed by Defendant D.P. Sawyer, Inc., ECF No. 201, is granted;

2. The Motion for Summary Judgment filed by Defendant Interstate Highway Construction, Inc., ECF No. 207, is granted;

3. Plaintiffs' claims against Defendant D.P. Sawyer, Inc. and Defendant Interstate Highway Construction, Inc. are dismissed with prejudice;

4. The Clerk is directed to amend the caption to eliminate D.P. Sawyer, Inc. and Interstate Highway Construction, Inc. as Defendants; and

5. The Motion to Stay All Further Proceedings filed by Plaintiffs, ECF No. 324, is denied.

Dated this 14th day of January 2020.

BY THE COURT:

s/Laurie Smith Camp
Senior United States District Judge